**Maudell WATKINS**

v.

**Patricia R. HARRIS, Secretary of Health, Education and Welfare.**

Civ. A. No. 79–3173.

United States District Court,
E.D. Pennsylvania.

May 9, 1983.

---

Deborah Harris, Community Legal Services, Inc., Philadelphia, Pa., for Watkins.

Dawn MacPhee, Asst. U.S. Atty., Philadelphia, Pa., for Harris.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Before the court is an application for attorney's fees from counsel for plaintiff in an action in which plaintiff successfully challenged the decisions of the Secretary of Health, Education and Welfare (the "Secretary") denying her claim for disability benefits and supplemental income under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*

The fee petition is brought under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (hereinafter "EAJA" or the "Act").[1] Section 2412(d)(1)(A) reads:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to

---

1. We granted plaintiff's motion for summary judgment on December 27, 1982. Plaintiff's counsel filed her petition on January 25, 1983, within the time required pursuant to the EAJA. *See,* 28 U.S.C. § 2412(d)(1)(B).

subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The government does not contest that plaintiff was a prevailing party for purposes of the EAJA. However, it opposes counsel's application on the grounds that: (1) the EAJA does not apply to claims filed pursuant to Title II of the Act; (2) an award of fees for services performed prior to the effective date of the EAJA is prohibited; (3) an award of fees under the EAJA is precluded for services rendered at an administrative proceeding before the Social Security Administration; and (4) if the EAJA does apply (a) the position of the Secretary was substantially justified and (b) special circumstances exist which make an award of attorney's fees unjust.

█ The government argues that there is no recourse to the EAJA because the Social Security Act itself provides explicitly for attorneys' fees, at least with respect to plaintiff's Title II claim to which 42 U.S.C. § 406(b)(1) explicitly applies:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

The government contends that the last sentence of § 406(b)(1) establishes it is an exclusive provision for attorney's fees. It maintains that an award of fees pursuant to the EAJA would contravene not only § 406 of the Social Security Act but § 206 of the EAJA (P.L. 96–481) which renders the EAJA conditional upon other provisions of federal law:

> Nothing in section 2412(d) ... alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States. (Quoted at Note to 28 U.S.C. § 2412).

In effect, the government argues that this provision read in conjunction with § 406(b)(1) prevents utilization of the EAJA to obtain a fee award against the government for Social Security claims.

However, § 406(b)(1) and the EAJA differ in purpose. Section 406(b)(1) of the Social Security Act imposes a limitation on attorney's fees from funds which would otherwise have gone to the claimant in the form of benefits. The prohibition against "other" fees was necessary to enforce a 25% limitation on the fees which lawyers could charge their *clients* and deduct from the recovery the client would otherwise obtain. *See,* S.Rep. No. 404, 89th Cong. 1st Sess. *reprinted in* 1965 U.S.Code Cong. and Admin.News 1943, 2062; *McDonald v. Schweiker,* 551 F.Supp. 327 (N.D.Ind.1982).

The EAJA is a fee shifting statute and if attorneys' fees are awarded, they are in addition to the amount of the judgment not in diminution of the amount otherwise recovered. It is designed to ensure that individuals are not deterred from "seeking review of or defending against unreasonable governmental actions because of the expense involved in securing the vindication of their rights." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4984. Since the EAJA provides for additional fees to be assessed against the government, § 206 of

the EAJA is intended to prevent the Act from being applied to federal statutes which already authorize fee awards against the federal government. It does not conflict with § 406(b)(1) of the Social Security Act which limits the amount by which the claimant's award may be reduced.

In *National Resources Defense Council v. EPA,* 703 F.2d 700 (3d Cir.1983) (*"NRDC v. EPA"*), the Court of Appeals held that the EAJA applied to the Clean Water Act even though § 505(d) of that Act provides for an award of counsel fees for civil actions brought in district court pursuant to § 505(a), 33 U.S.C. § 1365 (1976). The petition for review in the Court of Appeals was pursuant to § 509(b)(1); the Act is silent with respect to counsel fees in such an action. The Court held that the EAJA applied because Congress had not already authorized a fee award.

> The legislative history of the EAJA makes it clear that Congress intended not to affect cases where fees already could be awarded, but instead to make fee awards possible in additional cases .... The House Report explains that
>
>> ... this section is not intended to replace or supercede any existing fee shifting statutes such as the Freedom of Information Act, the Civil Rights Acts, and the Voting Rights Act in which Congress has indicated a specific intent to encourage vigorous enforcement, or to alter the standards or the case law governing those Acts. It is intended to apply only to cases (other than tort cases) *where fee awards against the government are not already authorized.* [cited from H.R.Rep. No. 1418, *supra* at 4997]

*NRDC v. EPA,* at 705.

The Court of Appeals in *NRDC v. EPA, supra* at 706 n. 13, expressly relied on *Ocasio v. Schweiker,* 540 F.Supp. 1320 (S.D.N.Y. 1982) and cited with approval *Wolverton v. Schweiker,* 533 F.Supp. 420 (D.Idaho 1982) ("well-reasoned," *supra* at 707); *Berman v.*

*Schweiker,* 531 F.Supp. 1149 (N.D.Ill.1982); and *Shumate v. Harris,* 544 F.Supp. 779 (W.D.N.C.1982). These cases approve the award of fees under the EAJA where there has been a recovery under the Social Security Act; the Social Security Act also has no fee-shifting provision. The Court of Appeals could rely upon these Social Security cases because the House Report on the EAJA establishes Congress' explicit intent that the EAJA cover civil actions to review decisions of the Social Security Administration:

> There was much discussion whether the United States should be liable when it is a named party and represented in a civil action under the Social Security Act. The Committee decided that civil actions should be covered.

H.R.Rep. No. 1418, *supra* at 4991.

This is confirmed by a discussion on the House floor prior to final passage of the bill:

> MR. ROSTENKOWSKI. But as I read the language adopted by the Senate and the language that is presently before us, there is no exemption for social security cases in this language.
>
> MR. RAILSBACK. All right, if the gentleman would yield. I think the gentleman is wrong ... [I]n the conference they adopted the language of the Committee on the Judiciary bill which I say to my friend from Illinois would rather drastically *limit recovery only to actions where they went into the Federal district court....* Cong.Rec. H–10220, 96th Cong., 2d Sess. (October 1, 1980)

Congress would not have expressly referred to Social Security cases had it intended § 406(b)(1) to act as a bar to application of the EAJA. *NRDC v. EPA, supra,* and the cases cited therein are dispositive of this issue. Since § 406(b)(1) does not authorize fees against the federal government, it does not preclude application of the EAJA to social security cases.[2]

---

**2.** Although the plaintiff claimed benefits under both Title II and Title XVI, the government did not assert that the grant of attorneys' fees in

§ 406(b) cases barred application of the EAJA to Title XVI, nor did it address whether § 406(b)(1) applies to Title XVI cases. Inas-

■ The government contends that no fees are awardable for services performed prior to October 1, 1981, the effective date of the Act. The Third Circuit has held the government's position inconsistent with the plain meaning of the statute which permits payment of fees in any civil action *pending* on the effective date. *NRDC v. EPA, supra* at 712. "The test is not when the services were rendered but whether the action was pending on October 1, 1981." *Id.*

This action was instituted by plaintiff's motion to proceed *in forma pauperis* on August 1, 1979. We remanded to the Secretary for further proceedings on February 18, 1981; however, we retained jurisdiction through the second administrative hearing and the second appeal, upon which we ruled on December 27, 1982. This matter was pending as of the effective date of the Act and assuming all other requisites of the EAJA are met, plaintiff's counsel is entitled to an award for all services rendered in connection with the court action, including those performed prior to October 1, 1981.

■ Work performed by counsel at the administrative agency is not compensable under the EAJA. The recovery of fees for services rendered before a government agency under the EAJA is governed by § 203(a) of the EAJA, 5 U.S.C. § 504(a)(1):

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than to United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency as a party to the proceeding was

much as the explicit allowance in Title II claims to attorneys' fees (with a limitation of 25%) from claimant's award does not preclude application of the EAJA, that section would not bar application of the EAJA in Title XVI claims whether or not attorneys' fees are recoverable from the plaintiff by application of § 406(b)(1).

**3.** The House Report evaluating the estimated cost of application of the EAJA to adjudicative proceedings also excluded Social Security hearings:

substantially justified or that special circumstances make an award unjust.

The term "adversary adjudication" is defined as an adjudication "... in which the position of the United States is represented by counsel ...." 5 U.S.C. § 504(b)(1)(C); the government is not represented by counsel in social security hearings. Congress' intent to exclude social security hearings from the EAJA is clear from the conference report examining the definition of adversary adjudication:

> It is intended that this definition preclude an award in a situation where an agency, *e.g. the Social Security Administration,* does not take a position in the adjudication. (emphasis added) Conf.Rep. No. 96–1434, reported in [1980] U.S.Code & Admin.News 5003, 5012.[3]

Plaintiff's counsel does not challenge this, but she maintains that because there were administrative hearings by court order of remand, the supplemental administrative hearing became a part of the judicial review. This, she argues, makes the remand hearing a "civil action," 28 U.S.C. § 2412(d)(1)(A), rather than an "adversary adjudication," 5 U.S.C. § 504(b)(1)(C). We find no support for this position. In *Wolverton, supra,* there were "two complete trips through the administrative cycle." *Id.* at 425. That court found that "[t]he hearings before the Secretary do not come within the definition of either a 'civil action' or 'adversary adjudication' .... [a]ll costs, fees and expenses incurred in proceedings before the Secretary must be excluded from an award made to plaintiff under the EAJA." *Id.* at 424.

Approximately 230,000 administrative adjudications were terminated in fiscal year 1978, according to data prepared by the Administrative Conference of the United States. Social Security Administration (SSA) cases account for more than 91 percent of all administrative adjudication cases. SSA cases are not adversarial, as defined by the bill; therefore, a total of less than 20,000 agency adjudication cases, based on 1978 data, would be expected to be subject to the terms of this section.
H.Rep. 96–1418, *supra* at 5001.

While we share counsel's concern for adequate representation of claimants at the administrative level, this is provided for by independent judicial review of the entire record. Courts are bound by Congress' clear intent to exclude Social Security hearings from the EAJA. Therefore, counsel for plaintiff may not recover the 9¾ hours claimed for services performed in connection with the administrative proceeding before the Social Security Administration held as a result of this court's remand order of February 18, 1981. This, of course, does not preclude plaintiff's counsel from seeking an award of fees for services rendered at the administrative level under the applicable statutory and regulatory provisions of the Social Security Act.

■ Under § 2412(d) the burden is on the government to demonstrate that its position was "substantially justified." There is no presumption that the government position was not substantially justified simply because it lost the case, H.Rep. No. 96–1418 *reprinted in* 1980 U.S.Code & Admin.News at 4989–90, but the government must make a "strong showing" regarding the viability of its position. *NRDC v. EPA, supra* at 712. The test is essentially one of reasonableness. "Where the government can show that its case had a reasonable basis in law and in fact, no award will be made . . . ." H.Rep. No. 96–1418, *supra* at 4989. In evaluating the "position" of the government we look not only to its litigation position but also to the agency position which made the lawsuit necessary. *NRDC v. EPA, supra* at 707.

■ Plaintiff initiated her application for benefits on January 10, 1977 for disability resulting from diabetes mellitus. In a decision of May 15, 1978 the Administrative Law Judge ("ALJ") denied her claim based on a finding that the claimant's obesity and diabetes mellitus were controllable but not controlled because of her failure to follow a prescribed diet and treatment. The administrative Appeals Council declined to review

that decision. On appeal to this court we found that the ALJ's decision was not supported by substantial evidence. *Watkins v. Harris,* No. 79–3173 slip op. (E.D.Pa. February 18, 1981). We rejected the ALJ's finding that plaintiff's ability or inability to control her weight was relevant to her disability claim. We further determined that the ALJ's principal findings[4] were unsupported by the evidence. We also found that plaintiff was prejudiced by the lack of counsel at the administrative hearing. We remanded to the Secretary with directions to conduct a supplemental hearing and to enter more detailed findings of fact and conclusions of law.

On August 27, 1981, following the supplemental hearing in which no additional medical evidence was submitted, the ALJ again denied plaintiff's claim for benefits. This decision was based in part on the very factual and legal errors addressed in the court's decision to remand. On review for the second time, we adopted the Magistrate's Report and Recommendation which outlined the repeated errors of the ALJ. See, *Watkins v. Schweiker,* No. 79–3173 slip op. (E.D.Pa. December 27, 1982). Finding that a second remand would be wasteful and unproductive, we granted plaintiff's motion for summary judgment and directed the Secretary to enter an award of supplemental security income and disability benefits.

This case is precisely one to which Congress intended the EAJA to apply. The government's failure to correct its original errors on remand necessitated a second appeal; without the persistence of counsel, plaintiff's benefits would not have been forthcoming. The government's brief fails to set forth any justification for its position. Reviewing the case as a whole, we find the government's position was not "substantially justified."

■ Finally, the government contends that there are "special circumstances" exist-

4. Those findings were as follows: a) the claimant failed to follow her prescribed regimen of diet and treatment; and b) if she did follow such regimen she would be able to return to her former work as a cleaning woman.

ing in this case which would make an award unjust. The statutory language in 28 U.S.C. § 2412(d) authorizes an award to a prevailing party for fees and other expenses "incurred by that party" in the civil action. The government argues that plaintiff did not incur liability for fees because she was represented by Community Legal Services ("CLS") and not obligated to compensate it for services to which she was entitled by reason of her poverty.

Congress clearly intended that fees "incurred" are not limited to money actually owed attorneys:

> ... the computation of attorney's fees should be based on prevailing market rates without reference to the fee arrangements between the attorney and client. The fact that attorneys may be providing services at salaries or hourly rates below the standard commercial rates which attorneys might normally receive for services rendered is not relevant to the computation of compensation under the Act.

H.R.Rep. No. 96–1418, *supra* at 4994. Several courts have awarded attorneys' fees under the EAJA when the plaintiff was represented without charge. *See, Hornal v. Schweiker,* 551 F.Supp. 612 (Tenn.1982); *Ocasio, supra* (cited in *NRDC v. EPA, supra* ); *Underwood v. Pierce,* 547 F.Supp. 256 (C.D.Cal.1982).

The Third Circuit Court of Appeals has not addressed this issue with regard to the EAJA but has stated with regard to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* that "awards of attorneys fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel." *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). In *Cunningham v. F.B.I.,* 664 F.2d 383, 385 n. 1 (3d Cir.1981), the Court of Appeals denied fees to a *pro se* litigant, but explicitly stated that it did not intend to "foreclose an attorney fee award for a litigant represented by an attorney who, for whatever reason, does not charge the liti-

gant for services rendered." Moreover, *Shadis v. Beal,* 3 Cir., 685 F.2d 824, *cert. denied,* —— U.S. ——, 103 S.Ct. 300, 74 L.Ed.2d 282 (1982), upheld the award of attorneys' fees to CLS under another fee shifting statute, the Civil Rights Attorney Fees Award Act, 42 U.S.C. § 1988. The court, citing *Rodriguez, supra,* with favor stated:

> The statutory policies underlying the award of fees justify such shifting without regard to whether the individual plaintiff initially assumed the financial burdens of representation.... The award of fees to legal aid offices and other groups furnishing *pro bono publico* representation promotes the enforcement of the underlying statutes as much as an award to privately retained counsel. Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights. (citations omitted.)

*Shadis, supra* at 830.

We are persuaded by this language and by the Court of Appeals' recognition of the importance of CLS as a private attorney general to benefit the indigent, that plaintiff's failure to assume the financial burden of representation is not a bar to CLS' recovery of fees under the EAJA. We, therefore, find no "special circumstances" that make an award of fees unjust.

Counsel submitted an affidavit establishing that thirty-six hours were spent in connection with this litigation. She seeks compensation at the rate of $75 per hour for a total of $2,700.00. We find the hourly rate of compensation claimed reasonable and the time expended within the statutory guidelines of the EAJA. The court will enter an appropriate order awarding attorneys' fees in the amount of $2,700.00.