Willard L. COLE, Plaintiff,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES, Defendant.

Civ. A. No. 82–67 MMS.

United States District Court,
D. Delaware.

Dec. 28, 1983.

658

Hank R. Bernstein, Heiman & Bernstein, Wilmington, Del., for plaintiff.

Joseph J. Farnan, Jr., U.S. Atty., and Peggy L. Ableman, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiff is seeking attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (the "EAJA"), after having successfully challenged a decision by the Secretary of Health and Human Services terminating his disability and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–431, 1381–1383c. He requests fees for attorney time spent (1) pursuing district court review, (2) prosecuting his fee application, and (3) asserting his claim during the agency proceedings themselves.

Section 2412(d)(1)(A) of the EAJA allows for fees at the federal court level. It provides:

*Except as otherwise specifically provided* by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sound-

ing in tort) brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

*Id.* (emphasis added).

Fee awards for legal work performed at the administrative agency level, rather than at the federal court level, are governed by section 2412(d)(3). This provision permits a court to award such fees to a prevailing party in actions

... for judicial review of an *adversary adjudication,* as defined in subsection (b)(1)(C) of section 504 of Title 5 ..., unless the court finds that during such adversary adjudication the position of the United States was substantially justified, or that special circumstances make an award unjust.

*Id.* The term "adversary adjudication," in turn, is defined in 5 U.S.C. § 504(b)(1)(C) as:

an adjudication under section 554 [of the Administrative Procedure Act] ... in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license.

*Id.*

The government contests plaintiff's fee request on several grounds: first, that the EAJA does not apply to actions reviewing Social Security Administration decisions denying or terminating benefits; second, that even if the EAJA does apply to such cases, the position of the government in this case was "substantially justified"; and third, that even if the government's position was not substantially justified, plaintiff cannot collect for time spent at the administrative level or in prosecuting his fee request.

I. *Application of the EAJA to Social Security Cases*

■ The government's first contention is without merit. It argues that because the

Social Security Act specifically provides for attorney's fees for Title II claims under 42 U.S.C. § 406(b)(1), the EAJA is inapplicable. Section 406(b)(1) of the Social Security laws provides that:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, *no other fee may be payable or certified for payment for such representation except as provided in this paragraph.*

*Id.* (emphasis added). In addition, section 206 of the EAJA, 94 Stat. 2330, states that:

Nothing in section 2412(d) ... alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States.

The government has argued previously that the EAJA does not apply to judicial review of social security cases. The federal courts, however, have unanimously rejected the government's position. *See, e.g., Berman v. Schweiker,* 713 F.2d 1290 (7th Cir.1983); *Lonning v. Schweiker,* 568 F.Supp. 1079 (E.D.Pa.1983); *Watkins v. Harris,* 566 F.Supp. 493 (E.D.Pa.1983); *Gross v. Schweiker,* 563 F.Supp. 260 (N.D. Ind.1983); *Hornal v. Schweiker,* 551 F.Supp. 612 (M.D.Tenn.1982); *Shumate v. Harris,* 544 F.Supp. 779 (W.D.N.C.1982); *Ocasio v. Schweiker,* 540 F.Supp. 1320 (S.D.N.Y.1982); *Wolverton v. Schweiker,* 533 F.Supp. 420 (D.Idaho 1982); *cf. Knox v. Schweiker,* 567 F.Supp. 959 (D.Del.1983)

(the EAJA's costs provision applies to social security cases); *Bennett v. Schweiker,* 543 F.Supp. 897 (D.D.C.1982) (court does not decide if the EAJA applies because court finds government's position substantially justified).

The Third Circuit Court of Appeals has yet to apply the EAJA to a social security case. However, in *Natural Resources Defense Counsel v. Environmental Protection Agency,* 703 F.2d 700 (3d Cir.1983) (*"N.R.D.C. v. E.P.A."*), the court held the EAJA applicable to actions brought under section 505(a) of the Clean Water Act even though the Act itself provided attorney's fees for actions brought under section 505(d) of the Act. The government had argued that the language "except as otherwise specifically provided by statute" in section 2412(d)(1)(A) of the EAJA precluded the EAJA's application to the Clean Air Act. The appellate court disagreed, stating that the legislative history of the EAJA "makes it clear that Congress intended not to affect cases where fees already could be awarded, but instead to make fees possible in additional cases." *Id.* at 705. Quoting from the House Report, the court explained that the EAJA "is not intended to replace or supercede any existing fee-shifting statutes ... or to alter the standards of the case law governing those Acts. It is intended to apply to cases ... *where fee awards against the government are not already authorized."* *Id.* at 705, *quoting,* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4997 (emphasis added by *N.R.D.C.* court).

The attorney's fees provision of section 406 of the Social Security Act, like section 505(a) of the Clean Air Act, does not authorize fees "against the government." *See, e.g., Wolverton v. Schweiker,* 533 F.Supp. at 422–23 (section 406 does not authorize fees against the United States and thus the conditional language of section 2412(d) does not apply); *Shumate v. Harris,* 544 F.Supp. at 781–82 (same). In fact, several of the social security cases applying the EAJA were specifically relied on by the

*N.R.D.C. v. E.P.A.* court. *See* 703 F.2d at 706 & n. 13 (relying on *Shumate v. Harris,* 544 F.Supp. 779; *Ocasio v. Schweiker,* 540 F.Supp. 1320; *Wolverton v. Schweiker,* 533 F.Supp. 420; and *Berman v. Schweiker,* 531 F.Supp. 1149 (N.D.Ill.1982), *aff'd,* 713 F.2d 1290 (7th Cir.1983)).

Judge Shapiro explained in *Watkins v. Harris,* 566 F.Supp. 493, that not only are the social security cases consistent with *N.R.D.C. v. E.P.A.,* but that there is additional legislative history to support application of the EAJA to social security review cases. Judge Shapiro stated:

> These cases [relied on by *N.R.D.C. v. E.P.A.*] approve the award of fees under the EAJA where there has been a recovery under the Social Security Act; the Social Security Act also has no fee-shifting provision. The Court of Appeals could rely upon these Social Security cases because the House Report on the EAJA establishes Congress' explicit intent that the EAJA cover civil actions to review decisions of the Social Security Administration:
>
>> There was much discussion whether the United States should be liable when it is a named party and represented in a civil action under the Social Security Act. The Committee decided that civil actions should be covered.
>
> H.R.Rep. No. 1418, *supra* at 4991.
>
> \* \* \* \* \* \*
>
> Congress would not have expressly referred to Social Security cases had it intended § 406(b)(1) to act as a bar to application of the EAJA. *NRDC v. EPA, supra,* and the cases cited therein are dispositive of this issue. Since § 406(b)(1) does not authorize fees against the federal government, it does not preclude application of the EAJA to social security cases.

*Id.* at 496 (emphasis in original and footnote omitted). *See also Lonning v. Schweiker,* 568 F.Supp. at 1081 & n. 2 (reasoning of *N.R.D.C. v. E.P.A.* compels application of the EAJA to social security cases). This Court agrees that Congress intended the EAJA to apply to actions challenging Social Security Administration decisions.

## II. *Substantial Justification*

A more difficult issue is posed by the "substantially justified" language of section 2412(d)(1)(A). In *Dougherty v. Lehman,* 711 F.2d 555 (3d Cir.1983), the Third Circuit Court of Appeals addressed this language.

First, the court explained, the burden of proving substantial justification rests with the government. *Id.* at 561. Quoting from legislative history, the court stated that this burden was necessary to overcome "strong deterrents to contesting Government action" and because it is easier for the government, "which has control of the evidence, to prove the reasonableness of its action...." *Id., quoting* House Report, *supra,* 10, 1980 U.S.Code Cong. & Admin. News 4953, 4989.

Second, the court explained, the government need not establish its proof by evidence independent from the record in the case. "While the arguments of the parties, and any evidence introduced in the fees action, such as affidavits, must be carefully considered, it is essentially the relevant portions of the record in the underlying action which must be looked to...." 711 F.2d at 562.

Finally, the court defined the term "substantial justification." Congress used these words to arrive at a "middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous." *Id.* at 563. The test, the court explained, "essentially is one of reasonableness, not in terms of result, but in terms of *whether the government's position, even though unsuccessfully taken, had a 'reasonable basis in both law and fact.'"* *Id., quoting N.R.D.C. v. E.P.A.,* 703 F.2d at 700 (emphasis added).

The *Dougherty* court proceeded to establish a three-part test which the government must meet to prove that its position was substantially justified. The government must:

First, show that there is a reasonable basis in truth for the facts alleged in the pleadings. If no such basis for the government's factual allegations exist [sic], then the government's position may well be held not to be "substantially justified."

Second, the government must show that there exists a reasonable basis in law for the theory which it propounds. This is not to say that the government need demonstrate that there is a substantial probability that the legal theory advanced by it will succeed. See House Report, *supra,* at 11, 1980 U.S.Code Cong. & Ad.News, at 4490.

Finally, the government must show that the facts alleged will reasonably support the legal theory advanced. Thus, having met these requirements, if the government's legal theory, as applied to the facts, reasonably supports the Secretary's position, even though the government may not have ultimately prevailed, then the government will have proven that the "position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A).

711 F.2d at 564 (footnote omitted). *See also Lonning v. Schweiker,* 568 F.Supp. at 1083 (applying *Dougherty* "tripartite" test in social security case).[1]

■ The government's position[2] in the present case was not substantially justi-

fied. Mr. Cole is a 47 year old male who suffers from mental retardation, schizophrenia, hypertension and back pain. After paying supplemental social security benefits and disability benefits for several years, the Social Security Administration reviewed Mr. Cole's status and determined that he was no longer disabled. Mr. Cole contested this action at the agency level. He had a hearing before an ALJ who found that Mr. Cole possessed the functional capacity to return to his job as a dishwasher. The Appeals Council affirmed the ALJ's decision. Mr. Cole then sought judicial review. This Court adopted a Magistrate's Report and Recommendation on March 8, 1983, reversing the Secretary's decision for lack of substantial evidence and entered an order that Mr. Cole was entitled to disability and supplemental security income benefits. *Cole v. Secretary of Health and Human Services,* No. 82–67 (D.Del. March 3, 1983).

Plaintiff does not contend that mere reversal for lack of substantial evidence entitles him to a fee award. To equate "substantial justification" with "substantial evidence," plaintiff apparently realizes, would result in an automatic entitlement to fees in any case where an agency decision is reversed for an improper balancing of the evidence. Other courts have concluded that Congress did not intend this result. *See Kauffman v. Schweiker,* 559 F.Supp.

---

**1.** The House Report, cited by the *Dougherty* court, provides additional insight.

> Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation.
>
> The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing. Furthermore, the Government should not be held liable where "special circumstances would

make an award unjust." This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

House Report, *supra,* at 10–11, 1980 U.S.Code Cong. & Admin.News at 4989–90.

**2.** By "position," the Court means not only the legal arguments made by the government's attorneys before this Court, but also the underlying action of the Social Security Administration in terminating Mr. Cole's benefits. *See NRDC v. EPA,* 703 F.2d at 710–711 (government action which necessitated the lawsuit as well as post-complaint government conduct must be considered).

372, 375–76 (M.D.Pa.1983); *Hornal v. Schweiker*, 551 F.Supp. at 617–18; *Ulrich v. Schweiker*, 548 F.Supp. 63, 65 (D.Idaho 1982); *Bennett v. Schweiker*, 543 F.Supp. at 898; *Wolverton v. Schweiker*, 533 F.Supp. at 425; *but see Moholland v. Schweiker*, 546 F.Supp. 383, 386 (D.N.H. 1982). Thus, where courts have found that there was some evidence that the Secretary could reasonably have relied on in making his determination, even though reversing the Secretary for lack of substantial evidence, the courts have found the government's position substantially justified and have denied fees. *See Cornella v. Schweiker*, 553 F.Supp. 240, 244 (D.S.Dak. 1982); *Ulrich v. Schweiker*, 548 F.Supp. at 65–66; *Bennett v. Schweiker*, 543 F.Supp. at 898–99. On the other hand, where the Secretary has made an unreasonable error of law or has had *no* evidence to support his conclusions, the courts have awarded fees. *See, e.g., Watkins v. Harris*, 566 F.Supp. at 498 (government failed to correct legal errors on remand and necessitated a second appeal on same grounds); *Chee v. Schweiker*, 563 F.Supp. 1362, 1364–65 (D.Ariz.1983) (Secretary failed to follow clear and express language of Ninth Circuit Court of Appeals decision putting burden of proof on Secretary); *Wolverton v. Schweiker*, 533 F.Supp. at 425 (*no evidence in record*).

■ The Court concludes that in this case the government's position was not substantially justified (1) because it lacked a reasonable basis in law and (2) because by egregiously misbalancing the evidence before the ALJ, the ALJ lacked a reasonable basis in fact for his determination that Mr. Cole was not disabled.

### A. *Reasonable Basis in Law*

The ALJ's decision denying plaintiff benefits relied principally on the opinion of a government-paid doctor who based his diagnosis on a "one-shot interview," Mag. Rep. at 8, without benefit of the evaluations of Mr. Cole's personal physician. The government doctor contradicted overwhelming evidence of Mr. Cole's disability,

including a long history of his trouble keeping jobs and a diagnosis by Mr. Cole's treating physician that plaintiff could not compete in the job market. The Magistrate's Report, adopted by this Court, criticized the ALJ for his complete failure "to make any comment," Mag.Rep. at 5, about the substantial quantity of evidence supporting plaintiff's disability claim. This failure, the Magistrate explained, conflicted directly with the proscriptions of *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981). By not adhering to the clear requirements of *Cotter v. Harris*, this Court concludes that the government's decision to terminate Mr. Cole's benefits lacked a reasonable basis in law.

### B. *Reasonable Basis in Fact*

In addition to faulting the ALJ's compliance with *Cotter v. Harris*, the Magistrate criticized the ALJ's findings of fact on several grounds. First, the ALJ improperly failed to give greater weight to the report of a treating physician over that of a government-paid consultant who saw the claimant for only a brief examination. Mag.Rep. at 7. Second, the ALJ improperly discounted plaintiff's complaint of back pain where there was a history showing that plaintiff frequently quit jobs in the past due to back pain. Third, the ALJ unreasonably relied on plaintiff's testimony that he could get along with co-workers and was not suffering from hallucinations. Plaintiff's testimony, the Magistrate explained, was "belied by Plaintiff's work history which shows a pattern of inability to get along with the employer and a recent hospitalization for hallucinations." Mag.Rep. at 9. Plaintiff's testimony was consistent with his medical history "which reflect[ed] a tendency to deny having delusions and hallucinations and to reject the fact that he is limited." Mag.Rep. at 10. In summary, in the face of enormous contrary evidence, the ALJ terminated Mr. Cole's benefits because of the report of one government doctor.

The case of *Lonning v. Schweiker*, 568 F.Supp. 1079, provides a close analogy to

the instant case. The disability recipient in *Lonning* suffered from mental retardation. The Social Security Administration had terminated her disability benefits, relying, as in this case, in large part on a report of a government psychologist. Because the court found the psychologist's report to contradict overwhelming evidence of a disability, the court held that the government failed to meet its burden of proof of substantial justification under *Dougherty.* 568 F.Supp. at 1084 n. 5.

Similarly, in *Hornal v. Schweiker*, 551 F.Supp. 612, fees were awarded where the ALJ unduly relied on the report of a government physician. This physician, like the government's physician who tested Mr. Cole, performed minimal testing and reached conclusions conflicting with those of the claimant's personal physician. The court explained:

> Certainly, if the physicians were equally qualified, if they had examined the plaintiff for similar periods of time and if they had performed similar tests designed to diagnose the particular disability involved they could reach different, yet reasonable, conclusions. In that situation, even if the Court found a lack of substantial evidence to support the government's position, the Court could not find the government's position lacked substantial justification. However, when, as in the present case, the physician relied upon by the government performs an incomplete examination without specific attention to plaintiff's particular medical problem, (the effects of physical exertion on hypertension), the government is totally unjustified in relying on any such report in light of the overwhelming contradictory medical evidence.

*Id.* at 618. *See also Kaufman v. Schweiker*, 559 F.Supp. at 375–76 (applying *Hornal* to award attorney's fees).

Although it is impossible in the instant case to say that the ALJ had *no evidence* to support his denial of benefits, the Court has no trouble concluding that his factual finding of no disability was unreasonable "in light of the overwhelming contradictory medical evidence." *Hornal*, 551 F.Supp. at 618. It follows there was no reasonable factual basis in the record to warrant terminating Mr. Cole's disability and supplemental security income benefits. For this reason also, the government's position was not substantially justified.

### III. *Amount of Award*

 The Court agrees with plaintiff that he is entitled to fees for prosecuting the present EAJA petition, but agrees with the government that he may not recover for time spent at the administrative level.

It is well established, and plaintiff does not contest, that administrative proceedings under the Social Security Act are not "adversary adjudications" within the meaning of the EAJA. *See Watkins v. Harris,* 566 F.Supp. at 497; *Shumate v. Harris,* 544 F.Supp. at 781; *Wolverton v. Schweiker,* 533 F.Supp. at 424; *Berman v. Schweiker,* 531 F.Supp. 1153 (N.D.Ill.1982), *aff'd,* 713 F.2d 1290 (7th Cir.1983). "Adversary adjudication" is defined as a formal hearing at which "the position of the United States is represented by counsel or otherwise." 5 U.S.C. § 504(b)(1)(c). This description does not cover social security benefit proceedings. Indeed, the legislative history shows clearly that Congress understood those proceedings to be excluded from ADEA. The House Conference Report stated:

> The conference substitute defines adversary adjudication as an agency adjudication under the Administrative Procedures Act where the agency takes a position through representation by counsel or otherwise. It is intended that this definition preclude an award in a situation where an agency, *e.g. the Social Security Administration,* does not take a position in the adjudication.

H.Conf.Rep. No. 96–1434 at 23, 1980 U.S. Code Cong. & Admin.News 5003, 5012 (emphasis added). In addition, the Congressional Budget Office Cost Estimate for the EAJA specifically excluded Social Security Administration cases as being "not adver-

sarial, as defined in the bill." Cong. Budget Office Cost Estimate, *reprinted in* 1980 U.S.Code Cong. & Admin.News 5000, 5001.

■ Plaintiff urges the Court to create an exception in this case and allow an award for Mr. Cole's fight at the agency level. He argues that the government's conduct in his proceeding was so outrageous that it forced him to defend his disability against a pre-established government "position."

The Court does not believe it would be appropriate to create the suggested exception in light of the clear legislative intent to exclude social security proceedings at the administrative level from coverage under the EAJA. That Mr. Cole's benefits were terminated rather than denied upon initial application does not rise to a legal significance under the EAJA. Certainly the government has a right, and even an obligation, to reevaluate the entitlement of recipients to their social security benefits. This reevaluation process is no more "adversarial" than an initial application process. In both proceedings the claimant has the burden of proving to the Secretary his entitlement to benefits, and, in a termination case, the claimant may even receive a presumption of disability that he does not enjoy in an initial application for benefits. *See Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983). *Cf. Watkins v. Harris,* 566 F.Supp. at 497 (even when supplemental administrative hearing was ordered by federal district court, that hearing was not covered by EAJA). Furthermore, even were the Court willing to carve an exception for cases of outrageous government actions at the Social Security Administration level, plaintiff has been unable to put on record in this case any concrete evidence of a conscious effort by the government to wrongfully deprive him of his benefits.

Plaintiff is, however, entitled to fees for time spent prosecuting his EAJA petition.

*See Chee v. Schweiker,* 563 F.Supp. at 1365; *Kauffman v. Schweiker,* 559 F.Supp. at 376; *Vega v. Schweiker,* 558 F.Supp. 52, 54 (S.D.N.Y.1983); *but see Siedlecki v. Heckler,* 563 F.Supp. 43 at 44 (W.D.Wash.1983). To deduct time spent in pursuing a fee request would frustrate Congress' intention of removing "the financial obstacle to contesting unreasonable governmental action through litigation." *Knox v. Schweiker,* 567 F.Supp. at 961. Moreover, such an award is consistent with the law of the Third Circuit under other attorney's fees statutes. *See Bagby v. Beal,* 606 F.2d 411, 416 (3d Cir.1979); *Prandini v. National Tea Co.,* 585 F.2d 47, 53 (3d Cir.1978).

■ Plaintiff should within fifteen days submit an amended fee petition reflecting only hours spent after administrative proceedings were concluded, and including time spent preparing and arguing the present fee request.[3] I understand the government to concede the reasonableness of plaintiff's hourly rate. (Doc. 29 at p. 35). Judgment on the reasonableness of plaintiff's fees will be reserved until after the amended petition is filed. The government will have ten days to file objections. Plaintiff is directed to the Third Circuit Court of Appeals decision in *Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir.1983).

---

**3.** There was some discussion at oral argument about the considerable time spent by counsel for plaintiff in collecting his judgment from the government. The government, for some inexplicable reason, was unable or unwilling for several months after this Court's award of bene-

fits to issue the appropriate check to Mr. Cole as required by this Court's order. Although the government's delinquency is unfortunate, the EAJA was not intended to apply to the time spent on post-judgment collection efforts.